NORTH-WESTERN TRUST & SAVINGS BANK, PETITIONER, *v.* COMMIS-SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31128. Promulgated July 29, 1930.

*Laurence Graves, Esq.,* for the petitioner.
*J. L. Backstrom, Esq.,* and *P. A. Sebastian, Esq.,* for the respondent.

OPINION.

SMITH: At the hearing of this proceeding the petitioner abandoned certain issues raised by the pleadings. The issues not abandoned are (1) whether the respondent erroneously included in taxable income commissions upon bonds and mortgages purchased in 1920, a part of which were not sold during that year; and (2) whether the petitioner is entitled to have its excess-profits tax computed under the provisions of section 328 of the Revenue Act of 1918.

The argument of petitioner upon the first point is that the petitioner in effect purchased mortgages from its clients who desired to borrow money from it upon real estate security at amounts representing the difference between the face of the mortgage and the amount advanced to the mortgagor by the petitioner, and that the commission which is charged upon its books of account to income as of the date of the loan was not in reality income until the mortgage note or bonds secured by the mortgage had been sold or had been paid off by the mortgagor. It is submitted that one realizes no income from the ordinary purchase of property; that a merchant realizes no income or profit from the purchase of merchandise; that a sale is required before a profit or loss is realized; that petitioner was a merchant in real estate mortgage bonds and real estate mortgages and that no income was realized by the mere purchase of a mortgage or a bond issue underwritten. In support of this contention it cites S. M. 3820, C. B. IV–2, pp. 32–34, which deals with a number of questions arising in connection with the reporting of income by banks. It reads in part:

3. The third situation is where the bank purchases, at a discount, mortgages as securities for the purpose of resale. Such mortgage loans usually bear interest, and in the case of such loans no income from such discount is to be reported under either the cash or accrual systems until the payment of all or a portion of the loan, or a resale. * * *

Section 212 of the Revenue Act of 1918 provides in part as follows:

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

At the hearing of this proceeding the petitioner's secretary was asked:

Q. Do you know about [upon] what basis the books of the Northwestern Savings & Trust Company were kept, that is, the accrual basis or the cash receipts and disbursements basis?

A. The books were kept on an accrual basis at that time.

The evidence is conclusive that the petitioner charged to income at the time the loan was made the commission charged the mortgagor upon the loan; in other words, the petitioner agreed to loan the mortgagor the face amount of the loan but deducted therefrom for its own compensation the amount of the commission agreed upon. The books of account in 1920 were not kept differently from the way they were kept in prior years. The return for 1920 was made upon the same basis as the returns for prior years. The petitioner now proposes, however, to impugn the correctness of its books of account for the purpose of reflecting its true income and contends that the books of account and the returns made thereon do not reflect the true income.

A question analogous to this was before the Supreme Court in the case of *American National Co.* v. *United States*, 274 U. S. 99. The facts in that case were that under the plaintiff's usual course of business the borrower, upon the making of a loan, executed to the order of the company his note for the amount of the loan, due in five years, with interest at 5 per cent per annum, payable semi-annually, with the privilege of paying $100 or any multiple thereof on the principal, on or after two years, at the maturity of any interest payment. At the same time the borrower executed to the company another note due in two years, without interest, for 10 per cent of the total amount of the loan, as the company's commission or compensation for making and negotiating the loan. From these commission notes the company derived its income. In 1917, in accordance with the usual practice, the company accrued and set up on its books as a liability and charged to expense the aggregate amount of the payments called for in the bonus contracts given investors during that year. It made its tax return for that year upon the basis upon which the accounts were kept, claiming as an expense the aggregate amount of these bonus contracts as set up on its books. In the course of its opinion the court said:

* * * We think that the amount of the bonus contracts was " an expense incurred and properly attributable" to the Company's process of earning income during the year 1917, * * * The Company's net income for the year could not have been rightly determined without deducting from the gross income represented by the commission notes, the obligations which it incurred under the bonus contracts, and would not have been accurately shown by keeping its books or making its return on the basis of actual receipts and disbursements. The method which it adopted clearly reflected the true income. And, just as the aggregate amount of the commission note was properly included in

its gross income for the year—although not due and payable until the expiration of two years—so, under the doctrine of the *Anderson* case, the total amount of the bonus contracts was deductible as an expense incurred within the year, although it did not " accrue " in that year in the sense of becoming then due and payable.

The contention of the petitioner that it has realized no income from commissions charged on its loans to real estate owners until the mortgage note or bond issued against the mortgage is sold appears not to be well founded. Its contention would undoubtedly be well founded if the petitioner's books of account and returns had been made upon the basis of cash receipts and disbursements. But this was not the case. The books of account were kept and the returns were made upon the accrual basis and we have no doubt that the income accrued to the petitioner in the sense of the law from these commissions at the time the loan was made. The petitioner was then protected in respect of the amount of the commission by the mortgage which it had upon the property of the borrower.

The proceeding at bar seems to us to be controlled by the decision of the Board in *Columbia State Savings Bank*, 15 B. T. A. 219; affirmed by Circuit Court of Appeals for the Seventh Circuit, June 10, 1930. In that case it appeared that the petitioner made real estate or mortgage loans during 1921 and 1922, bearing interest at a specified rate. In addition to the interest a commission was charged and deducted from the face of each loan. Petitioner kept its books of account upon an accrual basis. We held that the total amount of commissions on loans so made in the respective years constituted taxable income for such years. Cf. *Clarence Schock*, 1 B. T. A. 528; *S. W. Harris*, 2 B. T. A. 933; *John F. Cook*, 4 B. T. A. 916; *H. V. Greene Co.*, 5 B. T. A. 442; *Olinger Corporation*, 9 B. T. A. 170.

The petitioner bases its right to special assessment for 1921, to use the words of the president of the corporation, on:

* * * The very favorable contract we had with the P. K. K. P., through which were able to obtain this large number of correspondents throughout the country, the great confidence that the Poles of the United States had in Mr. Smulski and his institution, the fact that during the War through deprivation and starvation the relatives and friends of Americans here wrote for help and asked them to send money to rehabilitate their farms and help them in a general way. There had been no money sent during this entire period, during the last War, to Poland, by any relatives, to their relatives in Poland, and the rapid drop in the value of the mark, which had no backing, created a favorable position for the bank in that we were able to make a very nice margin of profit on these remittances.

The pertinent portion of section 327 of the Revenue Act of 1918 provides:

That in the following cases the tax shall be determined as provided in section 328:

* * * * * * *

(d) .Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital * * *.

We find no abnormality in the invested capital of the petitioner. The petitioner undoubtedly had a favorable contract with the P. K. K. P., but that contract cost it nothing and there was no basis for including any value for it in the computation of invested capital.

Petitioner during 1920 had a foreign exchange department which it had had for a number of years prior to the war. Postwar conditions resulted in a large amount of business for its foreign exchange department. This favorable situation is not in our opinion an abnormality of income within the provisions of section 327 (d) quoted above. Cf. *Ryan Car Co.*, 15 B. T. A. 439. Nor do we consider that the expense (estimated to be $70,000) paid in succeeding years in straightening out its remittances in 1920 constitutes such an abnormality of income in 1920 as warrants special assessment. Those expenses were legal deductions from income of the year in which paid. Taking the agreement with the P. K. K. P. as a whole in conjunction with the operations of the petitioner in 1920, it appears that the income from the foreign exchange department was largely attributable to speculation in Polish marks resulting from the petitioner's favorable position in being able to profit by the drop in exchange rates. The income earned by the petitioner in 1920 was in the ordinary course of business and the tax for the year is high principally because the petitioner had a high rate of profit upon a normal invested capital.

*Judgment will be entered for the respondent.*